21-909-cv
*Town of Davie v. National General*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of November, two thousand twenty-one.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> REENA RAGGI
> *Circuit Judge*,
> ERIC VITALIANO,
> *District Judge.*[*]

---

TOWN OF DAVIE POLICE OFFICERS RETIREMENT SYSTEM, MASSACHUSETTS LABORERS' PENSION FUND,

    *Movants-Appellants*,

    v.                                   21-909-cv

CITY OF NORTH MIAMI BEACH POLICE OFFICERS' AND FIREFIGHTERS' RETIREMENT PLAN, individually and on behalf of all others similarly situated,

    *Plaintiff*,

NATIONAL GENERAL HOLDINGS CORP., BARRY

---

[*] Judge Vitaliano, of the United States District Court for the Eastern District of New York, sitting by designation.

KARFUNKEL, MICHAEL WEINER, ARTHUR CASTNER,

*Defendants-Appellees*.

---

For Movants-Appellants:        JOSEPH D. DALEY (Arthur C. Leahy, Joseph D. Daley, Ashley M. Price, *on the brief*), Robbins Geller Rudman & Dowd LLP, San Diego, CA.

David A. Rosenfeld, *on the brief*, Robbins Geller Rudman & Dowd LLP, Melville, NY.

For Defendants-Appellees:        DEREK SHAFFER (Michael B. Carlinsky, Corey Worcester, Ellyde R. Thompson, Renita N. Sharma, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Oetken, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

In this putative class action, Town of Davie Police Officers Retirement System and Massachusetts Laborers' Pension Fund ("Plaintiffs-Appellants") appeal from the district court's judgment of March 15, 2021, which followed an opinion and order of January 21, 2021, granting Defendants-Appellees' motion to dismiss Plaintiffs-Appellants' Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  The Amended Complaint was brought under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t, and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5, and

---

[1] Defendants-Appellees are: (1) National General Holdings Corporation ("National General" or the "Company"); (2) Barry Karfunkel ("Karfunkel"), the Company's Chief Executive Officer; (3) Michael Weiner ("Weiner"), its Chief Financial Officer; and (4) Arthur Castner (together with Karfunkel and Weiner, the "Individual Defendants"), the President of National General Lender Services, Inc., a wholly owned subsidiary of National General.

centers on National General's lender-placed insurance ("LPI") business, which commenced in or around October 2015 when National General acquired QBE Insurance Group Limited's ("QBE") LPI business, which became National General Lender Services.   As part of that LPI business, National General underwrote a type of auto insurance known as collateral protection insurance ("CPI") for Wells Fargo Bank, N.A. and Wells Fargo & Company (collectively, "Wells Fargo"). The Amended Complaint alleges that CPI was unnecessarily added to Wells Fargo's auto loan customers' accounts without their consent, and that during the Class Period (between July 15, 2015 and August 9, 2017, inclusive) Defendants-Appellees conspired with Wells Fargo to conceal the CPI scheme from investors.   The district court dismissed the complaint, principally concluding that Plaintiffs-Appellants had failed adequately to allege scienter.[2]   We assume the parties' familiarity with the underlying facts and procedural history of this case, which we reference here only as necessary to explain our decision to affirm.

\* \* \*

"We review the dismissal of a complaint *de novo*, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff."   *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010) (citations omitted).   An action under section 10(b) of the Exchange Act has the following basic elements: "(1) a misstatement or omission of material fact; (2) scienter; (3) a connection with the purchase or sale of securities; (4) reliance; (5) economic loss; and (6) loss causation."   *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98 (2d Cir. 2021) (citations omitted).   While Federal Rule of Civil Procedure 9(b) provides that "conditions of a person's mind may be alleged generally," under the Private

---

[2]  In its January 21 opinion and order, the district court granted Plaintiffs-Appellants' request for leave to further amend their complaint, but they declined to do so.

Securities Litigation Reform Act of 1995 ("PSLRA"), a securities plaintiff must nevertheless allege facts that suggest a "strong inference" of scienter. *See* 15 U.S.C. § 78u-4(b)(2)(A). The Supreme Court has characterized a "strong inference" of scienter as one that is "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). The requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness. *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 78 (2d Cir. 2021). Nevertheless, "where the plaintiffs do not allege facts supporting a motive," "their circumstantial evidence of actual knowledge must be correspondingly greater." *Slayton v. Am. Express Co.*, 604 F.3d 758, 776 (2d Cir. 2010). For the reasons set forth below, we agree with the district court that Plaintiffs-Appellants have not alleged facts amounting to a strong inference of scienter and thus affirm the court's dismissal of Plaintiffs-Appellants' section 10(b) claims.[3]

## 1. Motive and Opportunity

On appeal, Plaintiffs-Appellants first argue that, contrary to the district court's analysis, they adequately alleged a motive to conceal Wells Fargo's CPI scheme from investors arising from "the concrete benefit secured by National General from underwriting the lucrative, albeit often-unnecessary, CPI coverage." Br. of Plaintiffs-Appellants at 44. We disagree. As we have said before, the "concrete benefits" that are the focus of the motive inquiry must be *personal* in nature. *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553

---

[3] Because our conclusion as to scienter is sufficient to resolve this case, we need not address Defendants-Appellees' contention that Plaintiffs-Appellants also failed to allege any false or misleading statement or omission. In addition, Plaintiffs-Appellants' section 20(a) claim was properly dismissed given their failure adequately to plead a primary violation of section 10(b).

4

F.3d 187, 198 (2d Cir. 2009) ("In order to raise a strong inference of scienter through motive and opportunity to defraud, Plaintiffs must allege that [the defendant company] or its officers benefitted in some concrete and personal way from the purported fraud." (citations and internal quotation marks omitted)). "Motives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of this inquiry." *Id.* (citations omitted). Here, even assuming that National General's dealings with Wells Fargo in connection with the CPI scheme contributed to National General's bottom line, the motive that Plaintiffs-Appellants allege is little more than the general "desire for the corporation to appear profitable" that we have repeatedly rejected. *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).

We likewise agree with the district court that the allegations in the Amended Complaint regarding the sale of National General common stock by AmTrust Financial Services, Inc. ("AmTrust"), another insurance company in which members of Karfunkel's extended family owned a majority stake, are also insufficient. "[T]he 'motive' showing is generally met when corporate insiders allegedly make a misrepresentation in order to sell their *own* shares *at a profit*." *ECA*, 553 F.3d at 198 (emphasis added). Here, Plaintiffs-Appellants do not allege that *any* of the Individual Defendants sold National General shares during the Class Period, nor even that Amtrust itself sold its shares at a profit. *Cf. San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 814 (2d Cir. 1996) ("[W]e conclude that the sale of stock by one company executive does not give rise to a strong inference of the company's fraudulent intent; the fact that other defendants did not sell their shares during the relevant class period sufficiently undermines plaintiffs' claim regarding motive." (citations omitted)); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ("[Th]e sale of stock by one outside director does not give

5

rise to a strong inference of an intent to deceive . . . . The fact that the other defendants did not sell their shares . . . undermines plaintiffs' claim . . . .'"). These allegations thus fall short of suggesting "the concrete benefits that could be realized from one or more of the allegedly misleading statements or nondisclosures . . . ." *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 309 (2d Cir. 2015) (citations and internal quotation marks omitted).

### 2. Circumstantial Evidence

Plaintiffs-Appellants next contend that they satisfied the scienter requirement by pleading facts "constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citations omitted). Under Plaintiffs-Appellants' theory, Defendants-Appellees' knowledge of the CPI scheme (and their conscious or reckless concealment of that scheme from investors) can be inferred from: (1) due diligence that National General conducted before acquiring QBE's LPI business; (2) periodic review meetings that National General employees held with Wells Fargo and the materials that were circulated at those meetings; (3) a Wells-Fargo-commissioned investigation by Oliver Wyman, the management consulting firm, and Oliver Wyman's February 2017 report regarding the CPI program; and (4) National General's "flat" organizational structure. Again, we are not persuaded.

After examining "all of the facts alleged, taken collectively," we conclude that no "reasonable person" would "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 323–24 (emphasis omitted). Plaintiffs-Appellants rely on National General's pre-acquisition due diligence, but "conditional allegations of the sort that [a defendant] 'would' have learned the truth about a company's fraud" through due diligence are "generally insufficient" to plead scienter. *In*

6

*re Advanced Battery Techs., Inc.*, 781 F.3d 638, 646 (2d Cir. 2015) (alteration in original) (citations and internal quotation marks omitted). And while Plaintiffs-Appellants rely on the review meetings National General held with Wells Fargo and the materials that were distributed at those meetings, they fail to "specifically identify the reports or statements" made in connection with those meetings that contained incriminating information about the CPI program. *See Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). Plaintiffs-Appellants urge that the Oliver Wyman inquiry would have alerted Defendants-Appellees to the CPI-related misconduct because, as part of its investigation of Wells Fargo, Oliver Wyman interviewed National General employees. But the Amended Complaint identifies neither the employees who were interviewed nor their roles, nor does it plead that the Individual Defendants were aware of the purpose of the interviews. Finally, Plaintiffs-Appellants' emphasis on the Individual Defendants' positions within National General's "flat" organizational structure is similarly misplaced because, as discussed above, the Amended Complaint does not allege that any specific individual at National General was confronted with information about the CPI-related misconduct.

Considered as a whole, Plaintiffs-Appellants' allegations do not suffice to plead scienter with respect to the Individual Defendants. Nor do these allegations suffice to plead corporate scienter, as they fail to "create a strong inference either (1) that someone whose intent could be imputed to the corporation acted with the requisite scienter or (2) that the [allegedly false or misleading statements identified in the Amended Complaint] would have been approved by corporate officials sufficiently knowledgeable about the company to know that those statements were misleading." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177 (2d Cir. 2015) (citations and internal quotation marks omitted).

We have considered Plaintiffs-Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court